256 N.J. Super. 94 (1991)
606 A.2d 817
REGIONAL RECYCLING, INC., PLAINTIFF-RESPONDENT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, DEFENDANT-APPELLANT, AND COUNTY OF ESSEX, DEPARTMENT OF PLANNING AND ECONOMIC DEVELOPMENT, DIVISION OF SOLID WASTE MANAGEMENT, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued December 5, 1990.
Decided January 30, 1991.
*95 Before Judges GAULKIN, SHEBELL and HAVEY.
Craig S. Provorny, Deputy Attorney General, argued the cause for appellant (Robert J. Del Tufo, Attorney General, attorney; Mary C. Jacobson, Deputy Attorney General, of counsel).
Thomas A. McKinney argued the cause for respondent (Waldman, Renda & McKinney, attorneys).
The opinion of the court was delivered by GAULKIN, P.J.A.D.
The Department of Environmental Protection (DEP) appeals by leave granted from an interlocutory Chancery Division order *96 directing that it "immediately commence a review" of the application of plaintiff Regional Recycling, Inc. (Regional) for a solid waste facility (SWF) permit. N.J.S.A. 13:1E-4b; N.J.S.A. 13:1E-26a; N.J.A.C. 7:26-2.4. We reverse, for we conclude that DEP is statutorily barred from issuing an SWF permit to a facility not included in the approved solid waste management plan of the solid waste management district in which the facility is to be located.

I.
Regional operates a recycling facility and transfer station[1] at 295 Frelinghuysen Avenue in Newark, where it conducts business of two kinds. First, Regional receives solid waste generated in New York, removes the recyclable material, bales the residual solid waste and disposes of it outside New Jersey. Second, Regional receives solid waste generated in nearby New Jersey counties, removes and resells the recyclable waste, bales the residual solid waste and returns it to its county of origin for disposal in accordance with the applicable district solid waste management plan.
In October 1987, Regional applied to Essex County to be included in the Essex County Solid Waste Management Plan and also applied to DEP for an SWF permit. On November 23, 1987, Regional and DEP entered into an Administrative Consent Order authorizing Regional to operate pending completion and review of its permit application but for no longer than one year. The order recited that Regional had operated its transfer station "without having received approval ... since an unknown *97 date prior to February 27, 1987" and had "petitioned the Essex County Board of Chosen Freeholders to adopt an amendment to its County Solid Waste Management Plan to be included as a solid waste facility in the Plan." Regional was required to submit a complete "application package" within 60 days; if the package was not timely submitted, "the application will be automatically rejected and [Regional] will cease operation immediately."
Regional submitted its application package to DEP on December 7, 1987. By letter of January 7, 1988, DEP advised Regional that "the application is incomplete until such time as the facility is included within the approved Essex County District Solid Waste Management Plan." Apparently after some inconclusive discussions over the ensuing months, DEP, joined by the Board of Public Utilities, brought a Chancery Division action against Regional alleging, among other things, that Regional was "operating in violation of the terms of the Administrative Consent Order." That action was resolved by a June 28, 1988 consent order permitting Regional to (1) dispose of waste generated in Essex County "in accordance with Essex County Waste Management Plan and the Emergency Waste Redirection Order for Essex County" and (2) receive waste generated outside New Jersey and dispose of its residue "directly out-of-state or in any other fashion authorized by law." We are told that that order is still in effect.
By letter of February 16, 1989, the Division of Solid Waste Management of the Essex County Department of Planning and Economic Development advised Regional as follows:
Inasmuch as the state regulatory agencies have not set state standards for intercounty and interstate waste flow regulations, Essex County will seek guidance as to the disposition of your request. Therefore your request for inclusion in the Essex County Plan will not be granted at this time.
Regional shortly filed this action against both DEP and Essex County. Its complaint demanded judgment requiring Essex County to include it in the Essex County Solid Waste Management Plan and requiring DEP to issue an SWF permit. *98 Regional also sought to restrain DEP from terminating the November 23, 1987 Administrative Consent Order and asserted that termination of its right to operate would violate the June 28, 1988 Chancery Division order.
We need not recite all that has since occurred in the trial court. Suffice it to say that Regional ultimately moved to compel DEP "to undertake a review" of its SWF permit application notwithstanding the fact that it was not yet included in the Essex County Solid Waste Management Plan. The Chancery Division judge granted the motion based upon a ruling he had earlier made that "Regional does not have to be included in the County Plan, but must simply conform to it." That ruling is the focus of the appeal.[2]

II.
The Solid Waste Management Act (N.J.S.A. 13:1E-1 et seq.) grants DEP "power to supervise solid waste collection and disposal facilities or operations" and directs DEP to "require the registration of new and existing solid waste collection and disposal facilities and operations." N.J.S.A. 13:1E-4a. In determining whether and under what conditions to approve a solid waste facility or operation, N.J.S.A. 13:1E-4b provides that DEP
shall not approve the registration of any new operation or facility that does not conform to the solid waste management plan of the solid waste management district in which such operation or facility is to be located, as such plan shall have been approved by the department as hereinafter provided. Prior to the approval by the department of the solid waste management plan of any solid waste management district, the department may grant approval to any new solid waste collection or disposal operation or facility planned to be located in *99 any such district and that district shall include said operation or facility in its plan.
Similarly, N.J.S.A. 13:1E-26 mandates that
No person may proceed to construct, acquire, or operate any solid waste facility without having first obtained the approval of the commissioner. Such approval shall be granted only if the commissioner determines that:
a. The proposed construction, acquisition, or operation is consistent with the adopted and approved or promulgated solid waste management plan of the solid waste management district within which the solid waste facility is to be located; and
b. Any such proposed solid waste facility will be constructed or acquired, and operated, pursuant to the standards adopted and promulgated therefor by the department pursuant to the provisions of section 6 of the act to which this act is amendatory and supplementary.
In its rules, DEP has provided that the processing of an SWF permit application "shall not begin ... until the applicant has fully complied with the submission requirements of this subchapter" (N.J.A.C. 7:26-2.4(g)1); those requirements include "[d]ocumentation establishing that the facility has been included in the applicable district solid waste management plan." N.J.A.C. 7:26-2.4(b)2.
Regional contends that its operations "conform to" (N.J.S.A. 13:1E-4b) and are "consistent with" (N.J.S.A. 13:1E-26a) the Essex County Solid Waste Management Plan because, following removal of recyclable material, the residual New York-generated solid waste is returned to New York and the residual New Jersey-generated solid waste is returned to the solid waste management district whence it came for disposal in accordance with that district's plan. Since the waste flow emanating from its operations is directed as the Essex County Plan requires, Regional urges that the statutes cannot sensibly be read to foreclose DEP from granting a permit. The trial judge essentially adopted that view, stating that Regional was not statutorily barred from licensure as long as it "give[s] to the County all the waste the County is entitled to based upon the amount of waste picked up from within the County."
DEP argues, to the contrary, that a solid waste facility must be included within the solid waste management plan of the local *100 district in order to "conform to" or be "consistent with" that plan. Any other reading of the statutory provisions, DEP says, "has the capacity to throw solid waste management planning in the State of New Jersey into chaos." DEP's brief elaborates that argument as follows:
If facilities are allowed to operate without being included in district plans as long as they ship their waste to the same disposal facility used by everyone else in the district ..., then the role of solid waste planning expressly entrusted by the Legislature to the solid waste management districts and the DEP has been emasculated. Indeed, based on the flawed reasoning employed below, a solid waste facility could be set up by anyone in any location, consistent with the local zoning ordinances, thus depriving the solid waste management district and the DEP of any control over where such solid waste facilities should be located. Such a result flies in the face of the legislative intent underlying the Solid Waste Management Act and would prevent district and State officials from accomplishing the unequivocal goals of the Act  proper regional solid waste management planning.
Our reading of the relevant statutory sections persuades us that DEP's position is sound. N.J.S.A. 13:1E-20a mandates the formulation of "a solid waste management plan for each respective solid waste management district." The plan must be based upon and accompanied by a report containing
[a]n inventory and appraisal, including the identity, location and life expectancy, of all solid waste facilities within the solid waste management district.
N.J.S.A. 13:1E-21a(3). The report must also contain "[a]n analysis of existing solid waste collection systems and transportation routes" within the district. N.J.S.A. 13:1E-21a(4).
The solid waste management plan itself must include:
A site plan, which shall include all existing solid waste facilities located within the solid waste management district, provided that they are operated and maintained in accordance with all applicable health and environmental standards, and sufficient additional available suitable sites to provide solid waste facilities to treat and dispose of the actual and projected amounts of solid waste contained in the report accompanying the plan.
N.J.S.A. 13:1E-21b(3). Following formulation of the plan, the board of freeholders is required to prepare "a map showing the boundaries of the solid waste management district and the location of all existing and proposed solid waste facilities." N.J.S.A. 13:1E-23b. A public hearing on the adoption of the plan is required. N.J.S.A. 13:1E-23c. A notice of hearing must *101 be mailed to the owner "of each parcel of property within or without the district on which it is proposed to locate any solid waste facilities pursuant to the district's solid waste management plan." N.J.S.A. 13:1E-23d.
Following adoption of a plan, the board of freeholders must submit it and all supporting documentation to DEP. N.J.S.A. 13:1E-23g. DEP is required to "study and review" the plan and determine whether to approve, modify or reject it. N.J.S.A. 13:1E-24b. If DEP determines to modify or reject the plan, it must state its reasons and direct the board of freeholders to make the appropriate modification, either with or without holding another public hearing in the district. N.J.S.A. 13:1E-24d. The district plan must provide for "automatic review" by the board of freeholders at least every two years; DEP may review the plan at any time and, if DEP determines it to be "inadequate for the purposes for which it was intended," the freeholders "shall develop and formulate" a new plan for promulgation pursuant to the Act. N.J.S.A. 13:1E-20(a).
Those provisions make clear that a district solid waste management plan is designed to do more than direct the district's waste flow and determine locations for its ultimate disposition. The district plan is required to describe the types, numbers and locations of the solid waste facilities to handle the district's waste flow. That fixing of the district's solid waste facilities serves not only to assure that adequate facilities are established, but also to fulfill the legislative declarations that collection and disposal service be "efficient and reasonable" (N.J.S.A. 13:1E-2a), "coordinated" (N.J.S.A. 13:1E-2b(1)) and "economical" (N.J.S.A. 13:1E-2b(5)). Permitting solid waste facilities beyond those contemplated by the district plan would surely subvert those legislative goals. The district plan would be largely meaningless if unplanned and uncoordinated proliferation of facilities were permitted to occur.
Our case law has long and consistently read the Solid Waste Management Act as evidencing "a comprehensive plan on the *102 part of the State to control all facets of this industry." Ringlieb v. Tp. of Parsippany Troy Hills, 59 N.J. 348, 350, 283 A.2d 97 (1971); see also So. Ocean Landfill v. Mayor & Coun. Tp. Of Ocean, 64 N.J. 190, 194, 314 A.2d 65 (1974). The Act has thus been held to preempt municipal zoning and subdivision ordinances which would foreclose locating a solid waste facility as provided in a district plan. Chester Tp. v. DEP., 181 N.J. Super. 445, 438 A.2d 334 (App.Div. 1981); Little Falls Tp. v. Bardin, 173 N.J. Super. 397, 414 A.2d 559 (App.Div. 1979), certif. denied, 82 N.J. 286, 412 A.2d 792 (1980). In Little Falls Tp. we noted the N.J.S.A. 13:1E-21b(3) requirement of a site plan describing all district solid waste facilities; we held that a zoning ordinance prohibiting a use contemplated by the plan was invalid because it "frustrates the objectives" of the Act. Id. at 418, 414 A.2d 559. So too, here the objectives of the Act would be frustrated if DEP were required to license solid waste facilities other than those described in the site plan.
We therefore conclude that DEP may not grant an SWF permit for a facility which is not included in the adopted and approved district solid waste management plan: a facility cannot be said to "conform to" (N.J.S.A. 13:1E-4b) or be "consistent with" (N.J.S.A. 13:1E-26) the district plan if it is not provided for in that plan.[3] Given the narrow reach of the interlocutory order under review, we find it both unnecessary and inappropriate to determine whether Regional has any avenue of redress other than its prerogative writs action against Essex County, which is still pending in the Chancery Division; whether Regional is in a "`Catch-22' situation," as our dissenting colleague says, has not yet been demonstrated.

*103 III.
The trial judge also ruled that DEP must process the permit application notwithstanding Regional's failure to submit a "disclosure statement" concerning Clark Credit Corporation, a secured creditor. N.J.S.A. 13:1E-127e(1), (2); N.J.S.A. 13:1E-128b(1). In light of our holding that DEP may not grant a permit unless and until the Regional facility is included in the district plan, we choose not to address DEP's challenge to that ruling at this time.
The June 13, 1990 order directing DEP to "immediately commence a review" of Regional's SWF permit application is reversed.
SHEBELL, J.A.D., dissenting.
I am unable to lend my support to the perpetuation of the "Catch-22" situation imposed upon the plaintiff. I am willing to accept the position of DEP that, despite the contention of the Essex County Solid Waste Management District, DEP does indeed have sufficient regulations in place to regulate enterprises such as Regional Recycling, Inc. However, it is fairly commonplace that a county or district plan, as adopted locally, may fail to include facilities which are or seek to locate within the solid waste management district. See N.J.S.A. 13:1E-20a and -21a.
I do not perceive that the failure of a district or county plan to abide by one or more of its statutory obligations to include a facility can "statutorily bar[] [DEP] from issuing an SWF permit to a facility not included in the approved solid waste management plan of the solid waste management district in which the facility is to be located," as held here today. The holding of the majority runs contrary to the legislative intent we found to exist in our holdings in Chester Tp. v. Department of Envtl. Protection, 181 N.J. Super. 445, 438 A.2d 334 (App. Div. 1981) and Little Falls Tp. v. Bardin, 173 N.J. Super. 397, *104 414 A.2d 559 (App.Div. 1979), certif. denied, 82 N.J. 286, 412 A.2d 792 (1980).
I would therefore affirm that portion of the order of Judge Margolis which required the DEP to "immediately commence a review of the application sought by plaintiff for a solid waste facility permit" for the reasons set forth in his opinion from the bench on May 25, 1990.
NOTES
[1] A "recycling or reclamation facility" is

any place, equipment or plant designed and/or operated for the purpose of recycling or reclamation... to collect, store, process or to redistribute separated waste so as to return the material to market.
A "transfer station" is
a facility at which solid waste is transferred from one solid waste vehicle to another solid waste vehicle for transportation to a solid waste facility.
N.J.A.C. 7:26-1.4.
[2] Since DEP sought leave to appeal only from the order requiring it to review Regional's permit application, we do not consider the propriety of the Chancery Division's exercise of jurisdiction over DEP (see R. 2:2-3, 4; Enertron Industries, Inc. v. Mack, 242 N.J. Super. 83, 89, 576 A.2d 28 (App.Div. 1990)) or any other proceedings in the trial court.
[3] DEP does have authority under N.J.S.A. 13:1E-4a to "exempt from the requirement of registration any class of solid waste collection or disposal facility or operation" (see also N.J.A.C. 7:26-1.7, 1.8) and can grant approval to a facility before the district solid waste management plan has been approved by DEP (N.J.S.A. 13:1E-4b). Those statutory provisions are not implicated here.